IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 JUL 26  PM 3:24
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY

| | |
|---|---|
| LUCAS ROSSI, <br>                 **Plaintiff,** <br><br> -vs- <br><br> PRECISION DRILLING OILFIELD SERVICES CORPORATION EMPLOYEE BENEFITS PLAN, <br>                 **Defendant.** | Case No. A-10-CA-841-SS |

## O R D E R

BE IT REMEMBERED on July 26, 2013, the Court called a hearing in the above-styled cause, and Plaintiff Lucas Rossi and Defendant Precision Drilling Oilfield Services Corporation Employee Benefits Plan appeared by and through counsel. Currently before the Court are Rossi's Motion for Attorneys' Fees [#46], and Precision's Response [#47] thereto. Having considered the arguments of counsel, the documents, the file as a whole, and the governing law, the Court now enters the following opinion and orders, granting the motion in part.

### Background

This is an ERISA case. Plaintiff Lucas Rossi is the son of an employee of Precision Drilling Oilfield Services Corporation. He suffered a hemorrhagic stroke due to arteriovenous malformation when he was sixteen, and will require lifetime care. After surgery, Rossi underwent inpatient physical therapy at three different institutions: The Institute for Rehabilitation and Research–Memorial Hermann Hospital (TIRR), Eventide Nursing Home, and St. David's Rehabilitation and Nursing Facility. Precision Drilling denied benefits at the first two facilities

because the care appeared to be "custodial/maintenance" in nature. Precision then denied benefits at St. David's because there was allegedly no likelihood of Rossi improving under the plan of therapy. On administrative appeal to an outside reviewer, Precision affirmed the denials for yet a third reason, this time based on a plan exclusion for in-patient care which is purely for physical-therapy purposes.

This Court initially granted summary judgment for Precision, but the Fifth Circuit reversed, finding Precision's ever-changing reasons for denying benefits failed to comply with ERISA, by denying Rossi a full and fair review of his claim. *Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 366 (5th Cir. 2013) ("The Plan did not substantially comply with the 'full and fair review' requirement because it relied on an entirely different ground for denial on administrative appeal.").

Following remand and a status conference, the Court remanded to allow Rossi to present his claims to Precision again in light of the Fifth Circuit's judgment. This time, Precision initially denied benefits, on April 5, 2013. However, on administrative appeal, Precision finally changed its mind, and found the benefits Rossi seeks are covered, on May 3, 2013. The parties then filed a supplement to the administrative record, reflecting the post-suit proceedings. Presently, Rossi has moved for an award of attorney's fees.

## Discussion

Rossi is represented by two lawyers: Lonnie Roach, and J. Mitchell Clark. As to Roach, Rossi seeks fees of $61,792.99, based on 152.24 hours worked by Roach, at a rate of $400.00 per hour, as well as 9.4 hours worked by a legal assistant, at a rate of $95.00 per hour. Clark claims to

have worked 62 hours, at a rate of $350.00, amounting to fees of $21,700.00.[1] Finally, Rossi also seeks $2,340.90 in expenses.

I.      **Attorney's Fees Under ERISA**

A.      **Legal Standard**

Section 502(g) of ERISA authorizes an award of attorney's fees and costs at the discretion of the court. 29 U.S.C. § 1132(g)(1); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 820 (5th Cir. 1997). The threshold requirement for an award of fees is a showing of "'some degree of success on the merits.'" *Hardt v. Reliance Standard Ins. Co.*, 130 S. Ct. 2149, 2158 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686 (1983)). "A claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was "substantial" or occurred on a "central issue."'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688 n.9).

Prior to the Supreme Court's decision in *Hardt*, many courts used a five-factor analysis, referred to as the *Bowen* factors (described below), in determining whether to award attorney's fees in an ERISA action. *Hardt* clarified the initial inquiry is the showing of "some degree of success," *id.*, but left open whether courts should still apply the *Bowen* factors *after* a claimant makes a showing of success. *Id.* n.8.

The *Bowen* factors are: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar

---

[1] Rossi does not seek recovery for Clark's fees incurred exhausting administrative remedies, which would amount to a further $26,000.00.

circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Wegner*, 129 F.3d at 821. "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)." *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). However, the Supreme Court has held, "Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 130 S. Ct. at 2158. Albeit in an unpublished decision, the Fifth Circuit affirmed use of the factors, after the threshold showing of success, as lying within the scope of a district court's discretion. *1 Lincoln Fin. Co. v. Metro. Life Ins. Co.*, 428 F. App'x 394, 396 (5th Cir. 2011) (unpublished) ("A district court may consider the five factors, but *Hardt* does not mandate consideration. . . . It was in the district court's discretion to consider the five factors as it did . . . .").

**B.     Application**

After losing in this Court, but winning in the Circuit, Rossi ultimately prevailed on administrative appeal under the plan. Precision first argues the fees motion should be denied entirely, and alternatively argues the number of hours claimed is excessive and duplicative.

**1.     Whether an Award is Proper**

On the former point, Precision argues:

[A]lthough Plaintiff successfully convinced the Fifth Circuit not to uphold the District Court's opinion in favor of the Plan, the Fifth Circuit's decision was limited to a remand to the Plan Administrator for an internal appeal of the benefits determination. Neither the Fifth Circuit nor this Court entered any opinion in favor of Rossi on the merits of the dispute. Instead, the Plan conducted an internal appeal of Rossi's claims and alone decided to reinstate coverage. The outcome of this

>dispute is, therefore, more analogous to a private settlement than a legal decision in Rossi's favor.

Def.'s Resp. [#47] at 2.

This argument is unpersuasive, for three reasons. First, although Rossi has not obtained a judgment, he has apparently succeeded in obtaining the benefits he sought by filing this lawsuit, which is assuredly "some degree of success on the merits." *Hardt*, 130 S. Ct. at 2158. Second, Precision's argument sounds in prevailing-party analysis,[2] and the Supreme Court has made clear a party need not "prevail" in an ERISA action to qualify for an award of attorney's fees. *See id.* at 2156 ("We therefore hold that a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1).").

Finally, and most importantly, this argument is foreclosed by the facts in *Hardt*: there, the plaintiff, after being denied benefits and exhausting administrative remedies, sued in federal court. *Id.* at 2154. The district court denied cross-motions for summary judgment, but, similarly to the present posture in this case, remanded to the plan for a re-determination of benefits because the plan had failed to comply with ERISA guidelines. *Id.* After further review, the defendant plan agreed the plaintiff was eligible, and granted the benefits sought. *Id.* The plaintiff then moved for an award of attorney's fees, which the district court granted, but the court of appeals denied, because the plaintiff was not a "prevailing party" under the then-governing circuit precedent. *Id.* at 2255. The Supreme Court then reversed, overruling the "prevailing party" requirement as being unfounded in the statute, and found the district court acted within its discretion by awarding fees. *Id.* at 2159.

---

[2]*See, e.g., Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (noting a "prevailing party" is one who obtains a judgment or "has been awarded some relief by the court").

> After Reliance conducted that court-ordered review, and consistent with the District Court's appraisal, Reliance reversed its decision and awarded Hardt the benefits she sought. . . .
> These facts establish that Hardt has achieved far more than "trivial success on the merits" or a "purely procedural victory." Accordingly, she has achieved "some success on the merits," and the District Court properly exercised its discretion to award Hardt attorney's fees in this case.

*Id.* (citation omitted).

In other words, much like this case, the plan initially failed to provide the full and fair review required by ERISA guidelines, and, upon remand for a re-determination, likewise ultimately agreed benefits were due. The only distinctions between the procedural history of this case and *Hardt* appear to be immaterial: there, the district court ordered remand in the first instance, whereas this Court remanded after the Fifth Circuit reversed this Court's prior summary judgment ruling. The other distinction is similarly trivial: it appears the plan in *Hardt* granted benefits in the first phrase of the re-determination, whereas here Precision granted benefits upon administrative appeal during re-determination. Both of these are distinctions without a difference.

2.  ***Bowen* Factors**

Precision also argues the *Bowen* factors militate against an award of fees. The Court disagrees. The shifting array of denials suggests Precision was going to deny care at whatever facility Rossi went to, for whichever reason it could. It also violated ERISA guidelines, by forcing Rossi to aim at a constantly moving target. An award of fees could help deter other plan administrators from violating the ERISA guidelines in this manner. There is no suggestion Precision cannot satisfy an award of fees. Although Rossi does not appear have acted to benefit all participants and beneficiaries under the Plan, this is outweighed by the other *Bowen* factors. Finally, Rossi succeeded on the merits, and also succeeded on appeal to the Circuit in showing Precision violated

ERISA. Rossi suffers from a very serious medical condition, which apparently will require costly, lifetime care. As such, this was a very important case. It was legally significant as well, with the Fifth Circuit ultimately using it to provide helpful guidance to plan administrators and district courts, via a published decision. *See generally Rossi*, 704 F.3d at 366–68. Accordingly, the Court will grant an award of fees.

### 3. Whether the Award Should be Reduced

The hourly rates claimed—$350.00 and $400.00—are rather above the local average, which is around $250.00 for most practice areas in Austin, Texas. *See Lake Travis Med. Ctr v. U.S. Dept. of Housing & Urban Dev.*, No. A–10–CA–950–SS, slip op. at 6 (W.D. Tex. Sept. 26, 2011). They are also above the median rates for local attorneys of comparable experience. Roach has been practicing for twenty-two years, and claims an hourly rate of $400.00. However, the median for Austin practitioners in the 21-to-25 year range was only $263 in 2009. DEP'T OF RESEARCH & ANALYSIS, STATE BAR OF TEX., 2009 HOURLY FACT SHEET tbl. "2009 Median Hourly Rates by Years of Experience and Region" (2009), *available at* http://www.texasbar.com/AM/Template.cfm?Section=Research_and_Analysis&Template=/CM/ContentDisplay.cfm&ContentID=11240. Given inflation, and the difficulty and complexity of ERISA litigation, the Court finds $300.00 to be a reasonable hourly rate for Roach's work.[3] As such, the Court will reduce Roach's requested fees by 25%,[4] from $61,792.99 to $46,344.74.

---

[3] The Court notes Roach is a highly accomplished ERISA practitioner, exhibiting professionalism and a good rate of success in a difficult area of law. His work in this case probably is worth $400.00 an hour, but the Court must determine the reasonable hourly rate, not the premium rate.

[4] Precision does not challenge the $95.00 per hour rate for Roach's legal assistant, but did point out some of the hours claimed were somewhat excessive, such as eight hours to copy the administrative record, and a half-hour to send a fax. The Court accordingly reduces the fees due for services performed by the legal assistant by 25% as well.

Regarding Clark's fees, the Court was concerned as to why Rossi required two lawyers. At the hearing, Roach described the value Clark added to the case as encompassing two relevant areas: First, Clark was the primary contact with Rossi and his family, and had a greater relationship of trust with them. Accordingly, Clark undertook long trips from his office in Corpus Christi to Rossi's residence in San Saba in order to explain the course of the case. Similarly, Clark convinced Rossi's parent to maintain COBRA coverage when he was temporarily laid off by Precision Drilling Oilfield Services Corporation, which was necessary to maintain the viability of this lawsuit. Second, Clark was more familiar with the facts of the case, and assisted Roach with describing the facts in various filings. Meeting in person with the family of a young man with such a serious condition, over the course of what must have been a long and frustrating legal proceeding, is a valuable legal service. However, the Court finds $350.00 is an excessive fee for these services. As such, the Court finds a rate of $150.00 would be a reasonable rate, and awards a commensurate amount for the sixty-two hours worked by Clark: $9,300.00

Finally, Precision also argues many of Clark's time entries are vague, and questions the amount of airfare Roach claimed for his trip to New Orleans for the Fifth Circuit appeal in this case. However, several of the vague entries are from Clark's time records prior to filing this lawsuit, and Rossi is not seeking fees for those hours. The entries for which fees are sought appear sufficiently specific, such as "1.25 REVIEW DOC: Review Def MSJ," and "1.00 REVIEW DOC: Review Judgement [sic] and conf with Client." Pl.'s Mot. for Fees [#46], Ex., at 26. Regarding the apparently large airfare, Roach explained to the Court's satisfaction, the bill in question included his hotel stay, and was not some luxurious first-class ticket.[5]

---

[5] Roach admitted to enjoying a moderately expensive oyster dinner in New Orleans, and to having no regrets on ordering it. Given his success at the Circuit, a nice meal seems to have been in order.

## Conclusion

There is no question Rossi was represented by able counsel in this case, and but-for Roach's efforts, Rossi would not have obtained coverage under the Plan. The Court finds Rossi achieved complete success on the merits, and an award of fees is therefore merited. The Court does reduce the award in part due to somewhat high hourly rates claimed.

Accordingly,

IT IS ORDERED that Plaintiff Lucas Rossi's Motion for Attorneys' Fees [#46] is GRANTED IN PART;

IT IS FINALLY ORDERED that Defendant Precision Drilling Oilfield Services Corporation Employee Benefits Plan shall pay Plaintiff Lucas Rossi's reasonable attorneys' fees of FIFTY-FIVE THOUSAND SIX HUNDRED FORTY-FOUR DOLLARS AND SEVENTY-FOUR CENTS ($55,644.74), and expenses of TWO THOUSAND THREE HUNDRED FORTY DOLLARS AND NINETY CENTS ($2,340.90).

SIGNED this the 26th day of July 2013.

_/s/ Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE